**BAGNEL v. SPRINGFIELD SAND & TILE CO. et al.**

No. 3968.

Circuit Court of Appeals, First Circuit.

July 6, 1944.

Writ of Certiorari Denied Oct. 9, 1944.

See 65 S.Ct. 72.

Andrew B. Goodspeed, Willard, Allen & Mulkern, and Ralph H. Willard, all of Boston, Mass., for appellant.

Thomas H. Mahony, of Boston, Mass., and John I. Robinson, of Springfield, Mass., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This consolidated appeal brings up for review four judgments entered in the court below, all of them adverse to appellant Bagnel on a common question of law. The principal issue which has been argued is whether the provisions of the Workmen's Compensation Law of New York, Consol. Laws, c. 67, or the Workmen's Compensation Act of Massachusetts, G.L.(Ter.Ed.) c. 152, § 1 et seq., should be applied in a case where appellant, a resident of New York, working under a contract of employment made in that state, was, while on temporary assignment to work in Massachusetts, injured there in the course of his employment.

In 1940 Jacobson & Co., Inc., New York City, New York, contracted with the United Aircraft Corporation to furnish and install soundproofing in a plant at East Hartford, Connecticut. The acoustical stone pipe to be used on the job was manufactured at the plant of the Springfield Sand & Tile Company, Inc., Springfield, Massachusetts, a subcontractor. The latter corporation, in turn, engaged the Construction Service Corporation, also of Springfield, Massachusetts, to furnish the concrete mixers, a crane, and the operators of both mixers and crane, to be used in the manufacture of the acoustical stone pipe. Under arrangement with the subcontractors, Jacobson & Co., Inc., participated in the manufacture of the pipe on the premises of the Springfield Sand & Tile Company by supervising the work and by furnishing some of the labor.

Bagnel had been hired by Jacobson & Co., Inc., in New York some four years prior to the accident and had worked under such employment in New York. On January 6, 1941, Bagnel was sent by his employer to the Springfield plant of the Springfield Sand & Tile Company, where he remained until he was injured on January 18, 1941, while at work for Jacobson on the manufacture of the pipe.

It is stipulated "that said Jacobson & Co., Inc., by a policy of insurance under the Workmen's Compensation Law of the State of New York and by endorsement thereto or thereon also had coverage under the Workmen's Compensation Act of the Commonwealth of Massachusetts applicable to work upon which said Jacobson & Co., Inc., was engaged at the time and place of said injury to Bagnel; that Bagnel accepted the benefits of the Workmen's Compensation Law of the State of New York."

On January 16, 1942, Bagnel filed in the District Court of the United States for the District of Massachusetts two complaints in tort for negligence, one against the subcontractor Springfield Sand & Tile Company and the other against the subcontractor Construction Service Corporation. Jurisdiction was based upon diversity of citizenship. In each complaint it was alleged that while the plaintiff was a business invitee on the premises of the Springfield Sand & Tile Company, the defendant, its agents and servants then and there negligently maintained a hoisting crane known by them to be defective, and operated the said crane so negligently that its hoisting cable broke, precipitating its load upon the plaintiff to his grievous bodily injury. The Springfield Sand & Tile Company for answer set up several defenses. Its fifth defense was as follows:

"In further answer to the plaintiff's complaint the defendant says that at the time of the alleged accident the plaintiff was an employee of Jacobson & Sons Company, which was insured under the Massachusetts Workmen's Compensation Act; that the plaintiff had not reserved his common law rights in accordance with G.L.(Ter.Ed.) chapter 152, section 24; that the plaintiff's alleged injury arose out of and in the course of his employment in Massachusetts upon premises on which his employer was engaged; that the defendant was engaged in work which was a part of and process in the trade and business of Jacobson & Sons Company within the meaning of G.L. (Ter.Ed.) chapter 152, section 18; that therefore the defendant is not some person other than the insured within the meaning of G.L.(Ter.Ed.) chapter 152, section 15, and therefore the plaintiff cannot maintain this action."

This identical defense was set up in the answer of the defendant Construction Service Corporation as its fourth defense to the complaint against it.

Subsequently the two defendants in these pending tort actions filed separate petitions for declaratory judgment (48 Stat. 955, 28 U.S.C.A. § 400), raising the same question as to the application of the Massachusetts Workmen's Compensation Act, and each praying a declaration that Bagnel was not entitled to recover in his action of tort.

In the tort action of Bagnel against the Springfield Sand & Tile Company the District Court ordered a severance as to the fifth defense raised in the answer. After hearing on this defense the District Court on June 16, 1943, entered judgment for the defendant. Similarly in the tort action of Bagnel against the Construction Service Corporation the District Court ordered a severance as to the fourth defense, and after hearing thereon, entered judgment for the defendant on June 16, 1943. In the two declaratory judgment suits the court entered decrees on July 19, 1943, adjudging that the policy of insurance issued to Jacobson & Co., Inc., under the Massachusetts Workmen's Compensation Act covered the employment of Bagnel by Jacobson & Co., Inc., at the time of Bagnel's injury, and that Bagnel had and has no cause

of action against either of the two subcontractors for negligence at common law, and decreeing that Bagnel shall be permanently restrained from prosecuting the said tort actions.

Notices of appeal were filed by Bagnel in each of the four cases aforesaid and, upon motion, we granted him leave to consolidate the appeals and docket them as a single case.

Problems of more than ordinary complexity in the field of conflict of laws have arisen in the application of various state workmen's compensation acts to industrial accidents with which two or more states may have some legitimate concern. See Dwan, Workmen's Compensation and the Conflict of Laws (1927) 11 Minn.L.Rev. 329; Dwan, Workmen's Compensation and the Conflict of Laws—The Restatement and Other Recent Developments (1935) 20 Minn.L.Rev. 19; Dunlap, Conflict of Laws and Workmen's Compensation (1935) 23 Calif.L.Rev. 381; Note, Conflict of Laws Provisions in Workmen's Compensation Acts (1943) 57 Harv.L.Rev. 242. Constitutional questions under the full faith and credit clause have injected added complications. Bradford Electric Light Co. v. Clapper, 1932, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696; Alaska Packers Ass'n v. Industrial Accident Commission of California, 1935, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044; Pacific Employers Ins. Co. v. Industrial Accident Commission, 1939, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940; Magnolia Petroleum Co. v. Hunt, 1943, 320 U.S. 430, 64 S.Ct. 208. Fortunately, we are not obliged in this case to deal with the general subject matter comprehensively and at large. On the particular facts of the case at bar the problem can be rather narrowly confined.

 Bagnel is not here seeking compensation from his employer under the Massachusetts Workmen's Compensation Act. He is not suing his own employer in tort under the common law. He is suing the two subcontractors for negligence. It is not claimed that there is anything in the provisions of the New York Workmen's Compensation Law which would take away whatever common law rights of action he might otherwise have against the subcontractors.[1] Bradford Electric Light Co. v. Clapper, 1932, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696, can therefore be no obstacle to recovery, even disregarding the fact that this case has apparently been much limited, if not substantially over-

---

[1] The New York act is compulsory. As construed by the New York courts, we assume that Bagnel was entitled to compensation under the New York act though his injury was received in Massachusetts, because his presence in Massachusetts was transitory and incidental to his New York employment. Smith v. Aerovane Utilities Corp., 1932, 259 N.Y. 126, 181 N.E. 72. So far as New York has constitutional power to make it so, Bagnel's remedy against his employer, Jacobson & Co., Inc., is limited to his right to compensation as provided by the New York act. But that act does not purport to take away any common law rights of action which the employee may have against third persons, such as the subcontractors in the case at bar. Section 29 of the New York act, Consolidated Laws of New York, c. 67, provides:

"§ 29. Remedies of employees; subrogation. 1. If an employee entitled to compensation under this chapter be injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in case of death, his dependents, need not elect whether to take compensation under this chapter or to pursue his remedy against such other but may take such compensation and at any time either prior thereto or within six months after the awarding of compensation, pursue his remedy against such other subject to the provisions of this section. If such injured employee, or in case of death, his dependents, take or intend to take compensation under this chapter and desire to bring action against such other, such action must be commenced not later than six months after the awarding of compensation and in any event before the expiration of one year from the date such action accrues. In such case, the state insurance fund, if compensation be payable therefrom, and otherwise the person, association, corporation, or insurance carrier liable for the payment of such compensation, as the case may be, shall have a lien on the proceeds of any recovery from such other, whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case and the expenses for medical treatment paid by it and to such extent such recovery shall be deemed for the benefit of such fund, person, association, corporation or carrier. Notice of the commencement of such action shall be given within thirty days thereafter to the commissioner,

ruled, by Pacific Employers Insurance Co. v. Industrial Accident Commission, 1939, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940. Since the injury occurred in Massachusetts, any rights of action in tort which Bagnel may have against the subcontractors must necessarily have been created by Massachusetts law. And it is certainly within the competence of the Massachusetts legislature to take away such common law rights of action. Hence in the present litigation, where the jurisdiction of the federal court in Massachusetts is based upon diversity of citizenship, the court is obliged to apply the Massachusetts law, as expounded by the state courts of Massachusetts so far as any guides may be found in their decisions. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

Relevant provisions of the Massachusetts Workmen's Compensation Act, as it read at the date of the injury to Bagnel, are set out in the footnote.[2]

---

the employer and the insurance carrier upon a form prescribed by the commissioner.

"2. If such injured employee, or in case of death, his dependents, has taken compensation under this chapter but has failed to commence action against such other within the time limited therefor by subdivision one, such failure shall operate as an assignment of the cause of action against such other to the state for the benefit of the state insurance fund, if compensation be payable therefrom, and otherwise to the person, association, corporation, or insurance carrier liable for the payment of such compensation. If such fund, person, association, corporation or carrier, as such an assignee, recover from such other, either by judgment, settlement or otherwise, a sum in excess of the total amount of compensation awarded to such injured employee or his dependents and the expenses for medical treatment paid by it, together with the reasonable and necessary expenditures incurred in effecting such recovery, it shall forthwith pay to such injured employee or his dependents, as the case may be, two-thirds of such excess, and to the extent of two-thirds of any such excess such recovery shall be deemed for the benefit of such employee or his dependents. * * *"

Bagnel filed his present complaints in tort against the subcontractors within a year after the date of his injury. But if the employee did not file such complaints within six months after the awarding of compensation to him under the New York act, then under § 29 his rights of action against such subcontractors are automatically assigned by operation of law to the person or insurance carrier liable for the payment of such compensation, and the employee ceases to be the real party in interest. If such were the situation in the case at bar it may be that the courts in Massachusetts should recognize and give effect to such assignment and should decline to allow the employee to maintain the tort actions in Massachusetts, assuming he originally had such tort rights of action under Massachusetts law. See the interesting opinion of Lederle, D. J., in Alexander v. Creel, D.C.S.D.Mich., 1944, 54 F.Supp. 652. But this would be a matter of affirmative defense, and the subcontractors have not raised any such defense in their respective answers to Bagnel's complaints in the case at bar. The stipulated facts recite that "Bagnel accepted the benefits of the Workmen's Compensation Law of the State of New York," which presumably means that he accepted compensation under that act. It does not appear on what date he was awarded compensation under that act. For all that appears, he may well have filed his complaints in the case at bar within six months after such award, in which case § 29 did not operate to effect an assignment of his rights of action against the subcontractors.

2 Mass.Gen.L.(Ter.Ed.) c. 152:

"Section 1. The following words as used in this chapter shall, unless a different meaning is plainly required by the context or specifically prescribed, have the following meanings:

\* \* \* \* \*

"(4) 'Employee', every person in the service of another under any contract of hire, express or implied, oral or written. \* \* \*

"(6) 'Insured' or 'insured person', an employer who has provided by insurance for the payment to his employees by an insurer of the compensation provided for by this chapter.

"(7) 'Insurer', any insurance company authorized so to do which has contracted with an employer to pay the compensation provided for by this chapter.

\* \* \* \* \*

"Section 15. Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee may at his option proceed either at law against that person to re-

That act was of the so-called "elective" type, both as to employer and employee.[3]

cover damages or against the insurer for compensation under this chapter, but, except as hereinafter provided, not against both. If compensation be paid under this chapter, the insurer may enforce, in the name of the employee or in its own name and for its own benefit, the liability of such other person, and if, in any case where the employee has claimed or received compensation within six months of the injury, the insurer does not proceed to enforce such liability within a period of nine months after said injury, the employee may so proceed. In either event the sum recovered shall be for the benefit of the insurer unless such sum is greater than that paid by it to the employee, in which case four fifths of the excess shall be paid to or retained by the employee. [As amended by Mass. Laws 1939, c. 401.]

\* \* \* \* \*

"Section 18. If an insured person enters · into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons. \* \* \* This section shall not apply to any contract of an independent or subcontractor which is merely ancillary and incidental to, and is in no part of or process in, the trade or business carried on by the insured, nor to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured.

\* \* \* \* \*

"Section 21. Every insured person shall, as soon as he secures a policy, give written or printed notice to all persons under contract of hire with him that he has provided for payment to injured employees by the insurer.

"Section 22. Every insured person shall give written or printed notice to every person with whom he is about to enter into a contract of hire that he has provided for payment to injured employees by the insurer. An employer ceasing to be insured shall, on or before the day on which his policy expires, give written or printed notice thereof to all persons under contract with him. In case of the renewal. of the policy no notice shall be required. He shall file a copy of said notice with the department. The notices required by this and the preceding section may be given in the manner therein provided or in such other manner as may be approved by the department.

\* \* \* \* \*

"Section 24. An employee of an insured person shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury therein occurring, to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person, if the employee shall not have given the said notice within thirty days of notice of such insurance. An employee who has given notice to his employer that he claimed his right of action as aforesaid may waive such claim by a written notice, which shall take effect five days after it is delivered to the employer or his agent. The notices required by this section shall be given in such manner as the department may approve.

\* \* \* \* \*

"Section 26. If an employee who has not given notice of his claim of common law rights of action, under section twenty-four, or who has given such notice and has waived the same, receives a personal injury arising out of and in the course of his employment, or arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer, and whether within or without the commonwealth, he shall be paid compensation by the insurer, as hereinafter provided, if his employer is an insured person at the time of the injury; provided, that as to an injury occurring without the commonwealth he has not given notice of his claim of rights of action under the laws of the jurisdiction wherein such injury occurs or has given such notice and has waived it.

\* \* \* \* \*

"Section 46. No agreement by any employee to waive his rights to compensation shall be valid \* \* \*."

[3] By amendment in 1943 the act has been made compulsory as to employers, though employees may still, by giving notice, retain their common law rights of action. Mass.Laws 1943, c. 529.

If the employer failed to take out insurance under the act he was deprived of his common law defenses. §§ 66, 67. The employee of an insured employer might retain his common law rights of action by giving notice to that effect to his employer, as provided in § 24. If he gave his employer such notice, he could not claim the statutory compensation. § 26. The act had a somewhat unusual provision to the effect that an employee of an insured person who had not retained his common law rights of action against such employer and who thus was entitled to claim compensation under the act, was not only barred from suing his employer at common law, but was also barred, under certain circumstances, from suing a negligent subcontractor of his employer. Catalano v. George F. Watts Corp., 1926, 255 Mass. 605, 152 N.E. 46. Referring to the interaction of §§ 15, 18 and 24, the court in Clark v. M. W. Leahy Co., Inc., 1938, 300 Mass. 565, 568, 16 N.E.2d 57, 58, has this to say:

"These three sections in combination have resulted in the establishment of a rule, governing common law actions for personal injuries suffered by employees of the contractor and of sub-contractors where the work is done under a general contractor who is an 'insured person,' that might not be apparent from a mere reading of the statute. The insurance of the general contractor or 'common employer' (Bresnahan v. Barre, 286 Mass. 593, 597, 190 N.E. 815) throws its shadow over the whole work. In that shadow (unless there has been a written notice under section 24 reserving common law rights) a cause of action for negligence causing a compensable personal injury cannot grow. Bresnahan v. Barre, 286 Mass. 593, 597, 190 N.E. 815. Since the insurance of the 'common employer' covers and protects all employees engaged in the 'common employment' (Bresnahan v. Barre, 286 Mass. 593, 597, 190 N.E. 815), one engaged in that common employment as contractor, sub-contractor or employee cannot be a 'person other than the insured' within section 15, and the injured employee has no option to sue him at common law. An insurer, whether of the common employer or of a sub-contractor, paying compensation to an employee, cannot recover over under section 15 against a negligent contractor, sub-contractor or employee engaged in the 'common employment' for the insurer succeeds only to the rights of the employee receiving compensation. Bindbeutel v. L. D. Willcutt & Sons Co., 244 Mass. 195, 198, 138 N. E. 239. See also Fidelity & Casualty Co. v. Huse & Carleton, Inc., 272 Mass. 448, 172 N.E. 590. In the application of this rule, it is immaterial whether the sub-contractors are insured or not. Bindbeutel v. L. D. Willcutt & Sons Co., 244 Mass. 195, 138 N.E. 239; Pimental v. John E. Cox Co., Inc., 299 Mass. 579, 583, 13 N.E.2d 441. The essential thing is the existence of a 'common employer' who is an 'insured person' under section 18 (Pimental v. John E. Cox Co., Inc., 299 Mass. 579, 13 N.E.2d 441), and who is having work done by contract in or about premises specified in section 18 (Doherty's Case, 294 Mass. 363, 2 N.E.2d 186, 105 A.L.R. 576), which work is part of or process in his trade or business. Corbett's Case, 270 Mass. 162, 170 N.E. 56."

The two subcontractors in the case at bar, in their respective answers to the complaints in tort filed against them by Bagnel, invoked the foregoing provisions of the Massachusetts act as conferring upon them immunity from common law liability under the circumstances of this case. But the provisions of the Massachusetts act taking away the common law liabilities of an insured employer and of his subcontractors are applicable only where the injury is compensable under the Massachusetts act. Clark v. M. W. Leahy Co., Inc., supra, 300 Mass. at page 569, 16 N.E. 2d at page 59. Therefore it is necessary to determine whether Bagnel could have sought and obtained the statutory compensation provided in the Massachusetts act. Bagnel's contention is that he could not; that the Massachusetts act is applicable only where the contract of employment is made in Massachusetts, and in that event whether or not the injury occurs in Massachusetts or elsewhere. He contends that since Massachusetts gives extraterritorial effect to its act where the contract of employment is made in Massachusetts, it should as a matter of comity and on correct principles of conflict of laws accord a similar extraterritorial effect to the Workmen's Compensation Law of New York where the contract of employment was made in the latter state; that since, under the New York act, Consol.Laws, New York, c. 67, § 11, the liability of Bagnel's employer, Jacobson & Co., Inc., to pay compensation as provided in the New York act "shall be exclusive and in place of any other lia-

bility whatsoever", Massachusetts would not have allowed Bagnel to claim compensation under the Massachusetts act despite the fact that he sustained his injury in Massachusetts. Some courts have taken this view. Hopkins v. Matchless Metal Polish Co., 1923, 99 Conn. 457, 121 A. 828; Hall v. Industrial Commission, 1925, 77 Colo. 338, 235 P. 1073; Solomon v. Call, 1932, 159 Va. 625, 166 S.E. 467.

■ But it is clear now that this is not a matter of constitutional obligation. Pacific Employers Ins. Co. v. Industrial Accident Commission, 1939, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940. The same state may give compensation under its act both in cases where the contract of employment was made within the state and the injury occurred elsewhere, Alaska Packers Ass'n v. Industrial Accident Commission, 1935, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044, and in cases where the injury was received within the state, though the contract of employment was made elsewhere, Pacific Employers Ins. Co. v. Industrial Accident Commission, 1939, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940, regardless of the "exclusive" provisions of the act of the other state. It comes down to a matter of construing the particular workmen's compensation act to determine its intended coverage. Massachusetts has a recognized legitimate interest which would justify it in providing compensation for its citizens, hired under a contract of employment made within the state, though they may be injured outside the state while temporarily absent on the business of the employer. Likewise Massachusetts has a recognized legitimate interest which would justify it in providing compensation to employees injured within the state while working under a contract of employment made elsewhere, for otherwise the injured men might become a public charge. In reference to the latter situation the court in Pacific Employers Ins. Co. v. Industrial Accident Commission, supra, 306 U.S. at page 503, 59 S.Ct. at page 633, 83 L.Ed. 940, said: "Few matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power." It results that in many cases an injured employee may be entitled to claim compensation under either of two workmen's compensation acts, whichever is more advantageous or convenient.[4] This is not necessarily an undesirable result. In Pacific Employers Insurance Co. v. Industrial Accident Commission, supra, it seems sensible that the employee was able to obtain compensation under the act of California, where he was injured and where the witnesses were handy, instead of being obliged to return to Massachusetts, where he had been hired, and make out his case for compensation under the Massachusetts act. Furthermore, where the state in which the injury occurred is committed to the view that it will give extraterritorial effect to the "exclusive" provisions of the act of the state in which the contract of employment was made, so as to deny compensation under its own act where the injury is compensable under the act of the other state, it is necessary for the agency administering the compensation act of the state wherein the employee was injured to determine a preliminary question of the coverage of the foreign act, often an exceedingly difficult question.[5] Upon an erroneous determination of such question the employee might

---

[4] Where an award has been made to the employee under the act of one state, the full faith and credit clause may debar another state from awarding compensation under its act. Magnolia Petroleum Co. v. Hunt, 1943, 320 U.S. 430, 64 S.Ct. 208. But even apart from this, there is no danger of duplicating recoveries, for the second state in making an award would give the employer a credit for what had been paid under the act of the first state. See the cases cited by Black, J., dissenting, 320 U.S. at pages 457, 458, 64 S.Ct. at page 222. The particular problem of Magnolia Petroleum Co. v. Hunt is not present in the case at bar. If a formal award has been made to Bagnel by the New York tribunal, nevertheless the New York law does not on that account disable the injured employee from suing a third person, the subcontractor, in tort for negligence. See footnote 1, supra. Massachusetts is not obliged to give to a New York award a greater effect than would be given it by the law of New York.

[5] The coverage of the New York act, for example, is often a very doubtful question on the particular facts even though the contract of employment was made in New York, as is apparent from the discussion in Smith v. Heine Safety Boiler Co., 1918, 224 N.Y. 9, 119 N.E. 878, Ann.Cas.1918D, 316; Cameron v. Ellis Construction Co., 1930, 252 N.Y. 394, 169 N.E. 622; and Smith v. Aerovane Utilities Corp., 1932, 259 N.Y. 126, 181 N.E. 72.

well find himself without remedy under either act.

With these considerations in mind we look now to the provisions of the Massachusetts act, and to the decisions of its courts to see whether Bagnel could have claimed compensation under that act.

Gould's Case, 1913, 215 Mass. 480, 102 N.E. 693, Ann.Cas.1914B, 372, is a leading case construing the Massachusetts act as it was before the important amendment of 1927. The court read the act as predicated upon the tort theory, that is, it regarded the act as intended merely to modify the employers' common law liability in tort and in that view concluded that the act was intended to be applicable only where the injury occurred within Massachusetts, in the absence of unequivocal language in the act indicating that it was to have an extraterritorial application. Hence the court denied compensation under the Massachusetts act to a resident of the state who was principally employed in Massachusetts under a Massachusetts contract of employment and who suffered injury in the course of his employment while temporarily working outside the state. In 1927, § 26 of the act was amended by adding the phrase "and whether within or without the commonwealth" and also by adding the proviso, "provided, that as to an injury occurring without the commonwealth he has not given notice of his claim of rights of action under the laws of the jurisdiction wherein such injury occurs or has given such notice and has waived it." Section 24 was amended by adding the phrase "or under the law of any other jurisdiction in respect to an injury therein occurring." Mass.Laws 1927 c. 309, §§ 2, 3. These amendments abrogated the holding in Gould's Case, and since that time compensation has regularly been allowed to employees working under contracts of employment made in Massachusetts and injured in the course of employment while temporarily outside the state. Pederzoli's Case, 1930, 269 Mass. 550, 169 N.E. 427; Phalen's Case, 1930, 271 Mass. 371, 171 N.E. 438; McLaughlin's Case, 1931, 274 Mass. 217, 174 N.E. 338; Migues' Case, 1933, 281 Mass. 373, 183 N.E. 847; Wright's Case, 1935, 291 Mass. 334, 197 N.E. 5; Bauer's Case, 1943, 314 Mass. 4, 49 N.E.2d 118.

Strange to say, counsel have cited no Massachusetts case, and we have not been able to find one, deciding the question whether the Massachusetts act is applicable to afford compensation to a citizen of another state, hired under a contract of employment made in the other state, and injured in the course of his employment while temporarily working in Massachusetts—the situation presented in the case at bar. We cannot, therefore, pass upon the interpretation of the Massachusetts act in this particular with any degree of confidence, but we have to do the best we can with the text of the act and with such intimations as we can find in the Massachusetts decisions.

■ As the act stood when Gould's Case, supra, was decided, it was apparently intended to cover any injury occurring in Massachusetts regardless of where the contract of employment was made. Such was expressly stated in the opinion in Gould's Case, 215 Mass. at page 485, 102 N.E. at page 695, Ann.Cas. 1914B, 372. The court referred to the definition of "employee" as including "every person in the service of another under any contract of hire" and said (215 Mass. at page 486, 102 N.E. at page 695, Ann.Cas.1914B, 372): "The natural significance of this is that it includes a service being performed in this commonwealth." This same language defining the term "employee" has remained in the act unchanged. The amendment of § 26 in 1927 adding the phrase "and whether within or without the commonwealth" was obviously put in to enlarge the coverage of the act so as to afford compensation in the situation presented in Gould's Case. But there is no indication that the amendment was intended also to restrict the coverage so as to exclude compensation for injuries received within the state by an employee working under an extra-state contract of hire. Perhaps it is significant that the concluding section in the amendatory act of 1927 reads as follows:

"Section 14. So much of section three of this act as extends the provisions of said chapter one hundred and fifty-two to injuries occurring outside the commonwealth shall take effect one hundred and twenty days after its passage." St.1927, c. 309.

This is indicative of the legislative intention to expand, rather than to contract, the coverage of the act.

■ Bagnel was certainly an "employee" within the broad definition of the act. His employer was "an insured person at the time of the injury" within the defini-

tion of the act, because he had provided by insurance for the payment to his employees of the compensation provided for by the act. Bagnel would therefore seem to have been entitled to claim compensation under § 26, provided he had not given notice of his claim of common law rights of action, a matter we shall refer to presently. In the absence of an authoritative decision by the Supreme Judicial Court, we do not feel justified in giving this remedial act a restrictive interpretation on the ground that the broad language of the act should be deemed to be qualified in deference to a debatable principle of conflict of laws, a principle which, so far as we can find, has never been avowed by the Massachusetts legislature or its courts.

■ We take it, then, that when Bagnel's employer provided insurance under the Massachusetts act Bagnel came, potentially, within the coverage of that act while working on the Springfield job. But since, as above stated, the act was elective, Bagnel was not obliged to relinquish his common law rights either against his employer or, as here, against his employer's subcontractors. The question remains whether Bagnel has waived his rights of action at common law by virtue of § 24 of the Massachusetts act.

■ It is to be noted that with reference to such waiver the first sentence of § 24 has two distinct provisions: (1) an employee who contracts to work for an insured person shall be held to have waived his rights of action at common law to recover damages for personal injuries "if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right"; (2) "if the contract of hire was made before the employer became an insured person" an employee is held to have made such waiver "if the employee shall not have given the said notice *within thirty days of notice of such insurance*" [italics ours]. In Young v. Duncan, 1914, 218 Mass. 346, 106 N.E. 1, the court attached significance to the differences in phraseology of these two provisions. It was dealing with the first situation, namely, where at the time of the contract of hire the employer was already insured under the Massachusetts act. In that situation, the court held, the employee automatically waives his right of action at common law unless at the time of the contract of hire he gives written notice to his employer that he claims such right,

and this irrespective of whether the employee at that time knew that the employer was insured, and irrespective of whether the employer gave the employee notice to that effect. The court said (218 Mass. at pages 349, 350, 106 N.E. at page 3):

"This absolute and unequivocal provision is not made dependent upon any other condition or circumstance. It is not made to rest upon knowledge or notice to him of the fact that the employer is a subscriber. That it was not intended to be dependent upon such knowledge or notice is plain *from the concluding clause, which in the event of the employer becoming a subscriber after the employment makes such waiver dependent upon notice* [italics ours]. The expression of this condition in the one class of cases impliedly would exclude it from the other, even if the language used were less plain."

In Gilbert v. Wire Goods Co., 1919, 233 Mass. 570, 124 N.E. 479, 480, the court was dealing with the second situation, supra, namely where the employer became insured under the Massachusetts act after the date of the contract of employment. The employer was therefore required by §§ 21 and 22 to notify his employees of the fact that he had provided for payment of compensation to injured employees by an insurer. The employer had given such notice; it had posted printed notices to that effect, in form and substance as required by the act and in the manner approved and prescribed by the Industrial Accident Board, "at the principal entrance to the factory, through which the plaintiff passed in going to and from her work, in the corner of the room where she was employed, and in each room where employés worked, and they remained in position up to and including the date of the plaintiff's injuries." The plaintiff did not read the notices and had no knowledge of their contents. She never gave her employer any notice in writing claiming her common law rights. The court held, on the facts, that the plaintiff must be deemed to have waived her common law rights of action against the employer. The act did not require, in this situation, that the employee have actual knowledge of the fact that the employer had become a subscriber under the act; it was enough that the employer had given her notice of that fact in the manner prescribed by law. The court reaffirmed the construction put upon this section of the act in its earlier opinion in Young v. Dun-

can, supra. It is significant that § 24 has since been amended so as to read that an employee is held to have waived his rights of action at common law "if the contract of hire was made before the employer became an insured person * * * if the employee shall not have given the said notice within thirty days of the time said employer became an insured person * * *." Mass.Laws 1943, c. 529, § 6. Under this amendment, where an employer becomes an insured person under the act after the date of the contract of hire, the employee is automatically deemed to have waived his common law rights of action if he does not give his employer written notice that he claims such right within thirty days after the date the employer became an insured person, regardless of whether the employee had either knowledge or notice of the fact that the employer had become a subscriber under the act. But this amendment was made after the date of Bagnel's injury; the earlier version of § 24, as above explained, is applicable to the present case.

Though the stipulated facts do not explicitly say so, the district judge recited in his findings of fact: "It was assumed by all parties that Bagnel had not given notice reserving his common law rights." But was he required to give such notice, in order to avoid waiving his common law rights, under § 24 as it read prior to the 1943 amendment?

 At the date of Bagnel's contract of hire in New York, sometime in 1937, his employer was presumably then not insured under the Massachusetts act. There is no statement in the stipulation of facts to the contrary. Therefore, at that time, there was no occasion for Bagnel to give his employer notice, under § 24 of the Massachusetts act, that he claimed his common law rights of action. Hence, the case is one where the contract of hire was made before the employer became an insured person under the Massachusetts act; and in this situation, as above stated, § 24 provides that the employee shall be held to have waived his rights of action at common law "if the employee shall not have given the said notice within thirty days of notice of such insurance." The stipulated facts do not state when the employer became an insured person under the Massachusetts act. Nor do they state that the employer, upon becoming so insured, gave notice of that fact to his employees as required by §§ 21 and 22. On this record

it is impossible to say that Bagnel ever was obliged to give his employer written notice that he claimed his rights of action at common law in order to avoid a waiver thereof. We take it that if Bagnel had not waived his rights of action at common law on January 18, 1941, the date of his injury, his rights crystallized at that time, and he was therefore not disabled by the provisions of § 24 from suing the subcontractors in tort for negligence.

Our conclusion is that on the stipulated facts the Springfield Sand & Tile Company did not establish its fifth defense as set out in its answer to Bagnel's complaint; nor did the defendant Construction Service Corporation establish its corresponding defense.

The two judgments of the District Court dated June 16, 1943, in the tort actions, and the two decrees of the District Court dated July 19, 1943, in the declaratory judgment actions, are vacated, and the cases are remanded to the District Court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.